**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

JANE DOE,                                                    )
                                                             )
              Plaintiff,                              )
                                                             )
v.                                                           )
                                                             )
KIPP DC SUPPORTING CORPORATION also                          )
d/b/a KIPP DC – SHAW QALICB, INC., also                      )     Case No.
d/b/a KIPP DC – DOUGLAS QALICB                               )
Serve:  C T Corporation System                               )
        1015 15th St NW, Suite 1000                       )
        Washington, D.C.  20005                           )
also Serve:  KIPP DC Headquarters                            )
        2600 Virginia Ave NW, Suite 900                   )
        Washington, D.C.  20037                           )
                                                             )
        and                                               )
                                                             )
CAPITAL CITY PUBLIC CHARTER SCHOOL,                          )
INC.,                                                        )
Serve:  Karen Dresden                                        )
        3047 15th Street, NW                              )
        Washington, D.C.  20009                           )
                                                             )
        and                                               )
                                                             )
ALAN WADE COLEMAN, Individually, and as                      )
an Agent of KIPP DC and CAPITAL CITY                         )
PUBLIC CHARTER SCHOOL                                        )
7014 Northwest 39th Ave                                      )
Gainesville, FL  32606                                       )
                                                             )
        and                                               )
                                                             )
SUSAN SCHAEFFLER ETTINGER, Individually,                     )
and as an Agent of KIPP DC                                   )
                                                             )
        and                                               )
                                                             )
JANES ROE (1-10) Being the fictitious names of               )
agents and employees of KIPP DC and                          )
Capital City Charter School who are not presently            )
known to Plaintiff                                           )
              Defendants.                         )

## COMPLAINT AND JURY DEMAND
### INTRODUCTION

1.      Jane Doe was a student at Defendant KIPP DC in Washington, D.C., from on or about 2001 to 2005.  Beginning in 2004, when she was fourteen years old, and continuing until 2009, Jane Doe suffered an abusive and manipulative relationship, which included sexual abuse, imposed by Defendant Alan Wade Coleman, a teacher at KIPP DC.  Defendant Coleman worked at Defendant KIPP DC until 2005, when he became employed as a teacher at Capital City Public Charter School. On or about 2007, when she was sixteen years old, until the termination of the abusive relationship in June 2009, Plaintiff lived with Defendant Coleman at his home in Montgomery County, Maryland.

2.      Defendant Coleman was a 34-year-old man when he began his abuse of Plaintiff. Coleman entered into a plea agreement and pled guilty to sex abuse of a minor in Montgomery County, Maryland, in July 2017.  Defendant Coleman entered into a plea agreement and pled guilty to first degree child sex abuse in the District of Columbia in August 2017.  These plea agreements and guilty pleas were the result of criminal charges filed against Defendant Coleman in the respective jurisdictions, in connection with his sexual abuse of Plaintiff.

3.      Coleman began his manipulation of Jane Doe in 2004, when she was 14 years old and in the eighth grade at KIPP DC.  He seduced Jane with gifts, and offers of support and guidance, taking advantage of her immaturity and vulnerability.  When he had gained her trust, on or about January 2005 Coleman began to sexually abuse Jane, and continued sexually abusing her for nearly five years.  Coleman repeatedly abused Jane sexually and he sodomized her.  Coleman took Jane on trips, some of which were across state lines, during which he sexually abused and sodomized her. Coleman caused Jane to be isolated from her mother and other authority figures, and dominated and controlled her daily activities.  On or about June 2007 Coleman had Jane, a minor, leave her mother's house to live with him at his home in Montgomery County, Maryland.

4.     While Defendant Coleman subjected Jane to a life of nearly unending sexual abuse, KIPP DC and Capital City Charter School administrators, teachers, and staff knew Coleman engaged in egregiously inappropriate misconduct against Jane.

5.     Defendant Susan Ettinger, principal, and a founder, of KIPP DC, knew, *inter alia*, when Jane was in the eighth grade, that Coleman had an on-going inappropriate sexual relationship with Jane. Defendant Ettinger and KIPP DC failed to undertake an independent investigation, failed to take any action to stop the abusive sexual abuse and to protect Jane from Coleman's sexual abuse.

6.     On or about the academic school year 2005-2006 Plaintiff's mother informed the principal at Capital City Charter School that Defendant Coleman was living with her minor daughter and engaging in sexual relations with her. Capital City Charter School terminated Defendant Coleman's employment, but failed to undertake an independent investigation, failed to take any action to protect Jane, and failed to take any action to stop Coleman's sexual abuse of Jane.

7.     Defendants KIPP DC, Capital City Charter School Board, Ettinger, and Jane Roes 1-10 (collectively, "School Defendants") turned a blind eye to Defendant Coleman's blatant sexual misconduct against Jane. They failed to take a single step to investigate reports of Coleman's inappropriate relationships with Jane, curtail his access to Jane, report him to the appropriate authorities, or protect Jane and remediate the five years of sexual abuse that Coleman committed against Jane. School Defendants created and fostered an environment in which Plaintiff was vulnerable and subjected to Coleman's deplorable sexual abuse.

8.     As a consequence of his guilty plea in the District of Columbia, Defendant Coleman has been sentenced to a prison term and probation upon release. Coleman's sentencing in the criminal case in Montgomery County, Maryland, is pending.

9.     Plaintiff Jane Doe seeks recovery for the significant damages she has suffered as a result of Defendants' violations of the Educational Amendments of 1972 (Title IX), 20 U.S.C. §

1681, *et seq.*; the Fourteenth Amendment to the United States Constitution (under 42 U.S.C. § 1983);

and for other federal and state laws described in this Complaint.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1331 because this litigation involves matters of federal law, specifically claims made under the

Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 et seq., and claims for deprivation of

civil rights under 42 U.S.C. § 1983 and the United States Constitution.

11.     This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§ 1343(a)(3) & (4) because this litigation involves claims for deprivation of civil rights under 42

U.S.C. § 1983.

12.     This Court has supplemental jurisdiction over the state law claims alleged herein

pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy stemming from the

allegations that form the basis of the federal claims in this action.

13.     Venue in this District is proper pursuant to 28 U.S.C. §§ 1331 and 1391.

## PARTIES

14.     Plaintiff Jane Doe is of full age, a resident of the state of Maryland, a citizen of the

United States of America, and at all times relevant hereto, was a minor under the age of 18

during the time of the sexual abuse alleged in this Complaint.

15.     At all times relevant hereto, Defendants KIPP DC Supporting Corporation d/b/a

KIPP DC DC – Shaw QALICB, Inc., and d/b/a KIPP DC Douglas QALICB (hereinafter

Defendant KIPP DC) was a not-for-profit network of college-preparatory public charter schools

authorized to conduct business, and conducting business, in the District of Columbia.  Defendant

KIPP DC maintains its principal place of business at 2600 Virginia Ave NW, Suite 900, Washington, DC 20037.

16.     At all times relevant hereto, Defendant Capital City Public Charter School, Inc., (hereinafter Defendant Capital City) was a not-for-profit public charter school authorized to conduct business, and conducting business, in the District of Columbia.  Defendant Capital City maintains its principal place of business at 100 Peabody Street, NW, Washington, D.C.  20011.

17.     Defendant Alan Wade Coleman (hereinafter Defendant Coleman) is an adult male convicted sex offender, currently incarcerated with the District of Columbia Department of Corrections.  At all times relevant hereto, Defendant Coleman was an employee, servant, and/or real, apparent and/or ostensible agent of Defendants KIPP DC and Capital City, acting within the scope of his employment, service and/or agency; and licensed to teach in the District of Columbia.

18.     Defendant Susan Schaeffler Ettinger (hereinafter Defendant Ettinger) is an adult, whose residence will be determined during discovery.  During the 2004-2005 academic year Defendant Ettinger was the principal at, and a founder of, Defendant KIPP DC, and she was an employee, servant, and/or real, apparent and/or ostensible agent of Defendant KIPP DC, acting within the scope of her employment, service and/or agency.

19.     Defendants Jane Roes 1-10 are as yet unidentified administrators, officials, employees, agents, or persons otherwise affiliated with the above named defendants who violated Plaintiff's Constitutional Rights and other federal and state laws, causing injury to Plaintiff.

## FACTUAL ALLEGATIONS

20.     On or about 2000 through 2005 Plaintiff was a student at Defendant KIPP DC.

21.     On or about the academic year 2004-2005, Defendant Coleman came to know Plaintiff as a student in his science class.  Coleman also taught Plaintiff history and became her coach.  Plaintiff soon became Defendant Coleman's teacher assistant.

22.     At all times relevant hereto, Defendant KIPP DC represented that Defendant Coleman was a qualified teacher and person of high ethical and moral standing who would competently and responsibly assume the care and supervision of his students, including but not limited to Plaintiff.  Based upon these representations, Plaintiff's mother reasonably believed Defendant Coleman was a person worthy of her trust, and did in fact entrust Plaintiff to the care of Defendant KIPP DC, and by virtue, Defendant Coleman.

23.     As a student at KIPP DC, Plaintiff was under Defendant Coleman and Defendant KIPP DC's direct supervision, care and control, thus creating a special, fiduciary relationship, and/or special care relationship between Plaintiff and Defendants.  Additionally, as a minor child under their care, custody and control, Defendant Coleman and Defendant KIPP DC stood *in loco parentis* with respect to Plaintiff while she was attending school and school-related functions.

24.     Through his employment at KIPP DC, Defendant Coleman used his position of authority and trust to gain the confidence, friendship, and eventually, the admiration of Plaintiff.

25.     Using his position of authority and trust at KIPP DC, Defendant Coleman also sought and gained the trust of Plaintiff's mother.  Plaintiff's mother worked long hours, and, on occasion, would allow Defendant Coleman to care for Plaintiff.  Due to his position at Defendant KIPP DC, Plaintiff's mother entrusted Plaintiff to the care of Defendant Coleman, under the assumption that Coleman was assisting Plaintiff with her studies and adjustment in school.

26.     On or about January 2005 Defendant Coleman began his sexual abuse of Plaintiff. When the relationship began, Plaintiff was 14 years old and Defendant Coleman was 34 years old. Thereafter, Defendant Coleman engaged Plaintiff in sexual intercourse approximately every day, or every other day. For example, during sexual intercourse Defendant Coleman would often yell at Plaintiff to intimidate her into having sexual intercourse. He would also perform sexually derogatory acts upon the person of Plaintiff, routinely tying her up, forcing her to wear costumes during sex acts, and ejaculating on her. Defendant Coleman sexually exploited and abused Plaintiff from on or about November 2004 until on or about June 2009.

27.     Defendant Coleman sexually abused, sexually exploited and sodomized the Plaintiff when she was a minor.

28.     On or about the academic year 2005-2006 Plaintiff was promoted to the ninth grade and she enrolled in another school.

29.     Based on information and belief, on or about the academic year 2005-2006 Defendant Coleman's contract of employment with Defendant KIPP DC was discontinued due to suspicious and/or allegations that he was engaged in inappropriate sexual relations with Plaintiff. Defendant Coleman then became employed at Defendant Capital City. Defendant Coleman continued his sexual relationship of Plaintiff.

30.     Defendant Coleman took Plaintiff, then a minor, on numerous trips, often across state lines, where he repeatedly sexually abused her.

31.     On or about the academic year 2005-2006 Plaintiff's mother learned of Defendant Coleman's sexual abusive of Plaintiff. She reported this abuse to Defendant Capital City. Capital City failed to take any disciplinary action again Coleman, failed to investigate the matter,

failed to report his sexual abuse of Plaintiff to any authority or to take action to stop the sexual abuse.

32.     Defendants KIPP DC and Ettinger allowed Coleman to have unsupervised and unrestricted contact with Plaintiff at all times of the year, including before and after school.

33.     Based on information and belief, Defendant Ettinger was suspicious that Defendant Coleman was having inappropriate sexual relations with Plaintiff and discontinued his contract of employment with KIPP DC.  Based on information and belief, Defendant Ettinger informed a board member at Defendant Capital City of her suspicions.  Defendant Ettinger and Defendant Capital City failed to undertake an independent investigation and failed to take any action to protect Jane from Coleman's sexual abuse or stop the abuse.

34.     On or about February 20, 2015, Plaintiff encountered Defendant Coleman through her Facebook account, questioning whether their relationship had been wrong and abusive.  On or about February 25, 2015, Plaintiff came to the realization that the relationship with Defendant Coleman had been wrong and abusive and asked him to resign from his teaching position at Defendant Capital City.  When Coleman did not resign from his teaching position Plaintiff contacted Defendant Capital City and informed them of the sexually abusive relationship she had with Defendant Coleman when she was a minor.  Defendant Capital City then terminated Coleman, but failed to notify any authority of Coleman's criminally abusive behavior.

35.     On or about April 2016 Plaintiff informed a former KIPP DC teacher of the abuse she suffered from Defendant Coleman.  This person notified the D.C. Metropolitan Police, and criminal proceedings commenced against Defendant Coleman in Maryland and the District of Columbia.

36.     The District of Columbia law empowers public charter schools to have sole responsibility for the public charter school's operation and personnel matters; and the power to be

sued in the public charter school's name. D.C. Code § 38-1802.04(b)(7) and (8), and (c)(3)(A).

Further, the District of Columbia requires public charter schools to "maintain the health and safety of

all students attending such school." D.C. Code § 38-1802.04(c)(4)(A).

37.    The District of Columbia law mandates that federal civil rights laws shall apply to a

public charter school, including title XI of the Education Amendments of 1972 (20 U.S.C. § 1681, et

seq.). D.C. Code § 38-1802.049(c)(5).

38.    Defendants KIPP DC and Capital City are recipients of federal funds within the

meaning of 20 U.S.C. § 1681(a).

39.    The District of Columbia law mandates that a school official and/or teacher who

knows or has reasonable cause to suspect that a child known to him or her has been or is in

immediate danger of being subjected to mental or physical abuse must immediately report such

suspicion or knowledge to the police department or to the Child and Family Services Agency.  D.C.

Code § 4-1321.02(a).

### School Defendants Failed to Provide Essential Training and Education to Administrators, Staff, Students and Parents on Sexual Abuse of Students by School Employees

40.    In January 2001, the U.S. Department of Education Office for Civil Rights ("OCR")

issued *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other*

*Students, or Third Parties*, informing all U.S. schools receiving Federal financial assistance –

including RCPS – that "[p]reventing and remedying sexual harassment in schools is essential to

ensuring a safe environment in which students can learn." The Guidance states, among other things,

schools are responsible for taking prompt and effective action to stop and prevent the recurrence of a

school employee's sexual harassment of a student.

41.    In 2004, the U.S. Department of Education issued *Educator Sexual Misconduct: A*

*Synthesis of Existing Literature*, a study that determined nearly 9.6% of all kindergarten through 12th

grade students are subjected to sexual misconduct by a school employee.

42.      In January 2006, OCR issued a Dear Colleague Letter to U.S. schools reminding them of their obligations to prevent and remedy sexual harassment, including sexual harassment committed by school employees against students.

43.      On April 4, 2011, OCR sent a Dear Colleague Letter to U.S. schools, that issued a "call to action" to the nation's schools because of "deeply troubling" data regarding school-place sexual violence. OCR reminded schools they have an independent obligation to investigate reports of sexual harassment, must designate at least one employee to coordinate and comply with Title IX responsibilities, and recommended schools provide training and education to faculty, staff, employees and students on sexual harassment and violence.

44.      Based upon information and belief, despite clear notice by the DOE, OCR and the District of Columbia law, School Defendants' obligations in preventing and remedying sexual harassment and abuse, and with notice and suspicion of the danger posed by Defendant Coleman to the vulnerable, then minor, Plaintiff, at all times relevant hereto School Defendants failed to provide training or education to administrators, staff, students, and parents regarding school employee sexual abuse of children.

45.      Based upon information and belief, School Defendants, at all times relevant hereto, failed to provide training or education to administrators, staff, students, and parents on protecting students from sexual abuse, identifying signs of child sexual abuse, identifying grooming behaviors of sexual predators, interviewing victims and potential witnesses of child abuse, investigating reports of child sexual abuse, remediating sexual harassment and abuse, and proper reporting of suspected sexual harassment or abuse.

46.      Based on information and belief, at all times relevant hereto, School Defendants had no written policies, procedures or guidelines for its employees concerning reporting child abuse and neglect to the proper authorities.

47.     Based upon information and belief, School Defendants, at all times relevant hereto, failed to provide training to administrators and staff regarding reporting suspected child abuse to the proper authorities.

48.     At all times relevant hereto, School Defendants, based upon information and belief, had no Title IX coordinator responsible for and/or trained in receiving, coordinating or investigating reports of sexual harassment and discrimination of students at their respective facilities.

### School Defendants' Teachers, and other Employees Turned a Blind Eye to Defendant Coleman's Sexual Abuse against Plaintiff

49.     Defendant Coleman began sexually abusing Jane in the 2004-2005 academic year, and he continued his relentless assault and abuse against Plaintiff for the next five years.

50.     At all times relevant hereto, Defendant Coleman's contact, relationship, and interaction with Jane arose from Coleman's position as an employee of Defendant KIPP DC Coleman misused his authority over Jane as a school employee to sexually abuse the minor.

51.     On or about 2007 Defendant Coleman manipulated Jane and persuaded her to live with him at his home in Montgomery County, Maryland.

52.     Coleman did not have legal custody or guardianship of Jane.

53.     While Jane lived with Coleman, Coleman and Jane slept in the same room and bed. Coleman sexually abused Plaintiff on a nearly nightly basis by, among other things, having sexual relations and sodomizing her.

54.     Defendant Ettinger had supervisory duties and responsibilities with respect to Coleman, and Ettinger had the ability and duty to take corrective action to protect Jane.

55.     Defendant Ettinger took no action to supervise, monitor, or investigate Coleman's interactions with Jane, did not monitor Coleman's activities, and failed to take any action to curtail Coleman's unrestricted and unsupervised access to Jane.

56.     Defendant Capital City had supervisory duties and responsibilities with respect to Coleman, had the ability and duty to take corrective action to protect Jane.

57.     Defendant Capital City took no action to supervise, monitor, or investigate Coleman's interactions with Jane, did not monitor Coleman's activities, and failed to take any action to curtail Coleman's unrestricted and unsupervised access to Jane.

### COUNT I
### Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.* (School Defendants)

58.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

59.     Defendant KIPP DC and Defendant Ettinger had actual knowledge or suspicion of Coleman's sexual misconduct against Jane, and based on information and belief, reported this knowledge and/or suspicion to a board member at Defendant Capital City.

60.     Defendant KIPP DC and Defendant Ettinger, by their action and inaction, created a climate whereby criminal sexual misconduct was tolerated, thus encouraging repeated misconduct and proximately causing injury to Plaintiff.

61.     Defendant KIPP DC, through its agents, Defendant Ettinger, along with Jane Roes 1-10, had actual knowledge of sexual assaults, exploitation, discrimination and harassment Coleman perpetrated against Plaintiff when he used his authority as a school employee to seduce Plaintiff and obtain her trust and dependency.

62.     Defendant Capital City had actual knowledge of Coleman's sexual misconduct against Jane, through her mother, and based on information and belief, through Defendant Ettinger.

63.     Defendant Capital City, by its action and inaction, created a climate whereby criminal sexual misconduct was tolerated, thus encouraging repeated misconduct and proximately causing injury to Plaintiff.

64.     Defendant Capital City, through its agents, Jane Roes 1-10, had actual knowledge of sexual assaults, exploitation, discrimination and harassment Coleman perpetrated against Plaintiff when he used his authority as a school employee to seduce Plaintiff and obtain her trust and dependency.

65.     The individuals with actual knowledge, including Defendant Eittinger, along with Jane Roes 1-10, had the authority and ability to investigate and take meaningful corrective action to end or prevent the sexual assaults, abuse, exploitation, discrimination and harassment, but failed to do so.

66.     The sexual abuse, exploitation, discrimination, and harassment Coleman inflicted on Jane was severe, pervasive, and objectively offensive, and effectively barred Jane's access to an educational opportunity and benefit.

67.     Jane suffered repeated school employee-on-student sexual assault and harassment, which is considered sex discrimination prohibited by Title IX.

68.     The sexual harassment Jane suffered created a hostile environment at KIPP DC.

69.     By their actions and inactions, Defendant KIPP DC and Ettinger acted with deliberate indifference toward the rights of Plaintiff to a safe and secure education environment, thus materially impairing Jane's ability to pursue her education at KIPP DC in violation of the requirements of Title IX.

70.     Specifically, the School Defendants violated Title IX by, *inter alia*:

a. Choosing to take no action to protect Jane, despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent Coleman's discrimination and harassment against Jane;

b. Creating a climate that tolerated sexual assault, exploitation, abuse and other misconduct, and that tolerated the complete disregard of reports or suspicion of sexual misconduct by Coleman, or was deliberately indifferent thereto;

c. Failing to provide, offer, recommend or coordinate adequate health, psychological, counseling, and academic assistance and services to Jane after Coleman sexually assaulted and abused her, or was deliberately indifferent thereto;

d. Failing to develop policies and procedures to address complaints of sexual abuse of a student by a teacher or other school employee;

e. Failing to report suspected child abuse, in violation of and as mandated by D.C. Code § 4-1321.02(a);

f. Failing to maintaining the health and safety of Plaintiff in violation of and as mandated by D.C. Code § 38-1802.04(c)(4)(A).

g. Failing to provide policy or training for its administrators and employees about sexual harassment and assault, sexual abuse, child abuse, or mandatory reporting;

h. Failing to terminate or otherwise discipline School Defendants' employees and agents identified herein for their willful disregard to Jane safety and rights, or were deliberately indifferent thereto; and

i. Through other actions, inactions, and deliberate indifference.

71.     As a direct and proximate result of the School Defendants' action, inaction, and deliberate indifference, Jane sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. Past, present, and future physical and psychological pain, suffering and impairment;

b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. Impaired educational capacity;

d. Impaired employment capacity;

e. Attorneys' fees and costs; and

f. Such other and further relief as this Court deems just and proper.

**COUNT II**
**Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. § 1983**
**Failure to Train**
**(School Defendants)**

72.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

73.    At all times relevant hereto, School Defendants were policy makers and administrators, acting under color of law, who had a duty to train, and failed to train, administrators, teachers, staff, employees, volunteers, students, and parents concerning their respective policies on reporting known or suspected abuse of students like Jane Doe.

74.    At all times relevant hereto, School Defendants were policy makers and administrators who had a duty to train, and failed to train, administrators, teachers, staff, employees, volunteers, students, and parents concerning school employee sexual misconduct against students and identifying, investigating, reporting, and stopping inappropriate conduct by School Defendants' employees like Coleman against students like Jane.

75.    At all times relevant hereto, School Defendants were policy makers and administrators who had a duty to train, and failed to train, administrators, teachers, staff, employees, volunteers, students, and parents regarding any written policies that would prevent or prohibit actions like those taken by Coleman against Jane.

76.    School Defendants failed to train their respective administrators, teachers, staff, employees, volunteers, students and parents despite the plainly obvious need for training on, among other things, school employee sexual misconduct against students and identifying, investigating, reporting, and stopping inappropriate conduct like that engaged in by Coleman.

77.    School Defendants failed to adequately prohibit or discourage readily foreseeable conduct in light of the known dangers faced by young students in U.S. schools, and Coleman's inappropriate conduct and suspected child abuse.

78.     School Defendants' failure to train their respective employees, servants and agents effectively denied Plaintiff's clearly established substantive due process rights under the Fourteenth Amendment to the United States Constitution, including her right to bodily integrity, right to be free from school employee sexual abuse, and educational property rights.

79.     School Defendants failed to train their respective employees, servants, and agents in reckless and/or callous indifference to Plaintiff's federally protected rights.

80.     As a direct and natural consequence of School Defendants' actions, inactions, and deliberate indifference to and violation of Jane's clearly established Constitutional rights, Plaintiff suffered, and continues to suffer, injuries including, without limitation, emotional distress, psychological trauma, and mortification.

81.     As a direct and proximate result of School Defendants' actions, inactions, deliberate indifference to, and violation of Jane's clearly established Constitutional rights, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.     Past, present, and future physical and psychological pain, suffering and impairment;

b.     Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.     Impaired educational capacity;

d.     Impaired employment capacity;

e.     Attorneys' fees and costs;

f.     Punitive damages as necessary and sufficient to deter Individual Defendants Ettinger and Jane Roes 1-10 from engaging in the same or similar behavior in the future; and

f.     Such other and further relief as this Court deems just and proper.

**COUNT III**
**Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. § 1983**
**Supervisory Liability (Defendant Ettinger)**

82.   Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

83.   Jane had clearly established substantive due process rights under the Fourteenth Amendment to the United States Constitution, including her right to bodily integrity, right to be free from school employee sexual abuse, and educational property rights.

84.   Defendant Ettinger at all relevant times was an employee of Defendant KIPP DC, acting under color of law, who had supervisory duties and responsibilities with respect to her subordinate, Defendant KIPP DC employee Coleman, from 2004-2005.

85.   Defendant Ettinger had actual knowledge and/or constructive knowledge, including knowledge she would have had if she used reasonable care or diligence, that Coleman engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff, based on information and belief, that she informed Defendant Capital City that Defendant Coleman was sexually abusing Plaintiff.

86.   Defendant Ettinger's response to this actual and/or constructive knowledge was so inadequate as to show deliberate indifference to or tacit authorization of Coleman's offensive misconduct against Plaintiff.

87.   Defendant Ettinger's response to this actual and/or constructive knowledge exhibited reckless and/or callous indifference to Jane's federally protected rights.

88.   Defendant Ettinger's took no action to supervise, monitor, or investigate Coleman's interactions with Jane, did not monitor Coleman's activities, failed to take any action to curtail Coleman's unrestricted and unsupervised access to Plaintiff, and failed to investigate her suspicion and/or actual knowledge of Coleman's offensive misconduct against Jane.

89.     As a direct and natural consequence of Defendant Ettinger's actions, inactions, and deliberate indifference to and violation of Jane's clearly established Constitutional rights, Plaintiff suffered, and continues to suffer, injuries including, without limitation, emotional distress, and psychological trauma.

90.     As a direct and proximate result of Defendant Ettinger's actions, inactions, deliberate indifference to, and violation of Jane's clearly established Constitutional rights, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.      Past, present, and future physical and psychological pain, suffering and impairment;

b.      Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.      Impaired educational capacity;

d.      Impaired employment capacity;

e.      Attorneys' fees and costs;

f.      Punitive damages as necessary and sufficient to deter Defendant from engaging in the same or similar behavior in the future; and

g.      Such other and further relief as this Court deems just and proper.

## COUNT IV
### Negligence *Per Se* – Violation of DC. Code § 22-3001 and 22-3008
### (School Defendants and Jane Roes 1-10)

91.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

92.     D.C. Code § 22-3008 states, "Whoever being at least four years older than a child, engages in a sexual act with that child… shall be imprisoned for any terms of years or for life and in addition, may be fired… the offensive defined by this section is a Class A felony."

93.     D.C. Code § 22-3001 defines child "as a person who has not yet attained the age of sixteen years."

94.     D.C. Code § 22-3301 defines "sexual act" as "[a] penetration, however short, of the anus or vulva of another by a penis." [b] contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or penetration, however short of the anus or vulva by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

95.     The above-referenced statutes were enacted for public safety, and to maintain and ensure the safety of school children in the District of Columbia.

96.     Plaintiff, belongs to the class of persons for whose benefit the above-referenced statutes were enacted, and the harm she suffered from Coleman's sexual abuse was the type against which the statutes were designed to protect.

97.     Defendant Coleman violated D.C. Code § 22-3008 by willfully causing acts and conditions that rendered Jane sexually abused.

98.     Defendants Ettinger and Jane Roes 1-10 violated D.C. Code § 22-3008 by willfully causing a condition through their actions and omissions that rendered Plaintiff sexually abused by Coleman.

99.     Defendants Ettinger and Jane Roes 1-10 violated a statutory standard of conduct designed to protect children and students from harm.

100.    School Defendants and Jane Roes 1-10 violated D.C. Code § 22-3008 by failing to curtail Coleman's unsupervised and unrestricted in-school access to Plaintiff, and failing to investigate or determine Coleman's relationship with student Jane, despite, based on information and belief, being aware of, any having real and/or conservative knowledge of Coleman's sexual abuse of Plaintiff.

101.   School Defendants, Coleman, Ettinger and Jane Roes' actions and inactions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences they were aware, based on their knowledge of existing circumstances and conditions, would probably result from their conduct and cause injury to Plaintiff Jane Doe.

102.   The foregoing acts of negligence *per se* directly and proximately caused Plaintiff Jane Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; she has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; she has incurred expenses for doctors and related medical and occupational care, and in the future she will continue to incur such expenses in an effort to be cured and healed; and in the future she will or may continue to lose time, income and earning capacity as well as other benefits from her work, employment or chosen occupation; and they have caused her to be unable to perform all of her activities of daily living and enjoyment, or to enjoy the normal activities of life, and will or may continue to cause her to be unable to perform such activities in the future.

### COUNT V
### Negligence *Per Se* – Violation of D.C. Code § 4-1321.02(a)
### Failure to Report Child Sexual Abuse
### (School Defendants and Jane Roes 1-10)

103.   Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

104.   School Defendants and their respective employees, including Defendants Ettinger, and Jane Roes 1-10, were at all times relevant hereto mandatory reporters pursuant to D.C. Code § 4-1321.02(a).

105.   As mandatory reporters, each one of School Defendants and their employees, including Defendants Ettinger, and Jane Roes 1-10, had the statutory duty to make an immediate report any time he or she had even a mere suspicion that Plaintiff was an abused or neglected child.

106.   D.C. Code § 4-1321.02(a) states in pertinent part: "...any person...who knows or has reasonable cause to suspect that a child known to him or her in his or her professional or official capacity has been or in in immediate danger of being a mentally or physically abused... child..., shall immediately report or have a report made of such knowledge or suspicion to either the Metropolitan Police Department of the District of Columbia or the Child and Family Services Agency."

107.   D.C. Code § 4-1321.02 (b) 509 designated school officials and coaches as required to report the above abuse and to immediately notify persons in charge of the institution or the designated agent.

108.   Plaintiff Jane Doe is a member of the class of persons D.C. Code § 4-1321.02(a) was enacted to protect, and the injuries she suffered are of the sort the statute was enacted to prevent.

109.   School Defendants and their respective employees, including Defendants Ettinger and Jane Roes 1-10, did not report to the designated authorities that he or she had reason to suspect that Plaintiff was an abused or neglected child, in violation of D.C. Code § 4-1321.02a).

110.   School Defendants and their respective employees, Ettinger and Jane Roes 1-10 violated a statutory standard of conduct designed to protect children and students from harm.

111.   School Defendants and their respective employees, Ettinger and Jane Roes' actions and inactions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences they were aware, based on their knowledge of existing circumstances and conditions, would probably result from their conduct and cause injury to Plaintiff Jane Doe.

112.   The foregoing acts of negligence *per se* directly and proximately caused Plaintiff Jane Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; she has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; she has incurred expenses for doctors and related medical and occupational

care, and in the future she will continue to incur such expenses in an effort to be cured and healed;

and in the future she will or may continue to lose time, income and earning capacity as well as other

benefits from her work, employment or chosen occupation; and they have caused her to be unable to

perform all of her activities of daily living and enjoyment, or to enjoy the normal activities of life,

and will or may continue to cause her to be unable to perform such activities in the future.

## COUNT VI
### Gross Negligence
### (Defendants Ettinger and Jane Roes 1-10)

113.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though

fully restated herein.

114.     Defendants Ettinger and Jane Roes 1-10 had a duty to supervise school children and

ensure that students, like Plaintiff, have an education in an atmosphere conducive to learning, free of

disruption, and free of threat to person.

115.     Defendants Ettinger and Jane Roes 1-10 failed to discharge their duties as a

reasonable prudent person would under the circumstances.

116.     Defendants Ettinger and Jane Roes 1-10's cumulative acts of utter disregard of

prudence, lack of even scant care, and heedless and palpable violation of their duties to Plaintiff and

other students amounted to complete neglect of the safety of Plaintiff.

117.     Rather than creating an environment in which Coleman's sexual abuse against, and

grooming of, vulnerable male students could not proceed unnoticed and unaddressed, Defendants

Ettinger and Jane Roes 1-10 created an environment in which the sexual abuse process could and did

flourish, in that Plaintiff, was sexually abused by School Defendants' employee Coleman, whose

behavior toward Plaintiff was observed, known to, and not challenged by School Defendants'

employees.

118.    Defendants Ettinger and Jane Roes 1-10 failed to report, address, correct or discipline Coleman for fraternizing with Plaintiff in an intimate or improper manner, in violation of policy and common sense.

119.    Defendants Ettinger and Jane Roes' actions and inactions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences they were aware, based on their knowledge of existing circumstances and conditions, would probably result from their conduct and cause injury to Plaintiff Jane Doe.

120.    Defendants Ettinger and Jane Roes 1-10 were deliberately indifferent to the dangers presented to Plaintiff, and the injuries suffered by Plaintiff, and breached their duties to her by their failure to:

a. Discipline Coleman for his abusive behavior toward Jane and repeated and continual violations of proper protocol;

b. Follow protocols or guidelines for sexual abuse prevention;

c. Properly train School Defendants employees in guidelines for the prevention of sexual abuse and misconduct;

d. Properly train School employees in their mandatory reporting duties;

e. Pay attention to the many warning signs of Coleman's intended and active harm to Jane;

f. Review and investigate the numerous indications of Coleman's intended and active harm of Jane; and

g. Report, protect and intervene on Jane's behalf in a timely manner.

121.    Defendants Ettinger and Jane Roes 1-10 were deliberately indifferent to Coleman's misconduct and the possibility of sexual misconduct toward Plaintiff when she was a child.

122.    Defendants Ettinger and Jane Roes 1-10 acted wantonly, and wantonly omitted actions with regard to the rights of the minor child Plaintiff when she was a child.

123.     Defendants Ettinger and Jane Roes 1-10 acted and omitted actions in a culpable manner regarding the rights of the minor child Plaintiff.

124.     Defendants Ettinger and Jane Roes 1-10 were grossly negligent and deliberately indifferent to the rights of the minor child Plaintiff to be free from the damages caused to her by Coleman.

125.     Defendants Ettinger and Jane Roes 1-10's cumulative actions and omissions in regard to the rights of Plaintiff revealed the want of even scant care, and amount to the absence of even slight diligence.

126.     Each of these School Defendants' employees could have reasonably foreseen that they would need to take affirmative action to protect Plaintiff from harm and serious bodily injury.

127.     Defendant Coleman, groomed Plaintiff for sexual contact and his grooming behavior was classic, clear and obvious.

128.     As a result of the gross negligence of Defendants Ettinger and Jane Roes 1-10, Plaintiff suffered physical and psychological injury, shame, humiliation, embarrassment, indignity to her feelings, and financial loss.

129.     The foregoing acts of gross negligence directly and proximately caused Plaintiff Jane Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; she has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; she has incurred expenses for doctors and related medical and occupational care, and in the future she will continue to incur such expenses in an effort to be cured and healed; and in the future she will or may continue to lose time, income and earning capacity as well as other benefits from her work, employment or chosen occupation; and they have caused her to be unable to perform all of her activities of daily living and enjoyment, or to enjoy the normal activities of life, and will or may continue to cause her to be unable to perform such activities in the future.

## COUNT VII
## Assault
## (Defendants Coleman and School Defendants)

130.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

131.    Defendant Coleman pled guilty to felony counts of child sexual abuse against Plaintiff.

132.    Defendant Coleman performed countless acts intended to cause harmful or offensive contact with Plaintiff and/or Plaintiff's apprehension of such conduct that created in her child's mind a reasonable apprehension of imminent battery.

133.    School Defendants Board are directly and vicariously liable for Defendant Coleman's assault against Plaintiff under the doctrine of *respondeat superior*.

134.    Defendant Coleman was employed as a teacher by Defendant KIPP DC and subsequently by Defendant Capital City.

135.    Defendant Coleman assaulted Plaintiff Coleman was performing teaching services within the ordinary course of his employment with Defendant KIPP DC and Defendant Capital City.

136.    Defendant Coleman misused his duties and authority as a school employee over Plaintiff to commit assault against Plaintiff.

137.    As a direct and natural consequence of Coleman's assault against Plaintiff, Plaintiff suffered injuries including, without limitation, emotional distress, psychological trauma, and mortification.

138.    Defendant Coleman's actions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences he was aware, based on his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to Plaintiff Jane Doe.

139.   Defendant Coleman's assault, for which School Defendant are vicariously liable, directly and proximately caused Plaintiff Jane Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; she has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; she has incurred expenses for doctors and related medical and occupational care, and in the future she will continue to incur such expenses in an effort to be cured and healed; and in the future she will or may continue to lose time, income and earning capacity as well as other benefits from her work, employment or chosen occupation; and they have caused her to be unable to perform all of her activities of daily living and enjoyment, or to enjoy the normal activities of life, and will or may continue to cause her to be unable to perform such activities in the future.

## COUNT VIII
### Battery
### (Defendants Coleman and School Defendants)

140.   Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

141.   Defendant Coleman pled guilty to 2 felony counts of child sexual abuse.

142.   Coleman engaged in countless acts of inappropriate touching against Plaintiff. Plaintiff did not – and could not legally – consent to the inappropriate touching, and the touching was not otherwise excused or justified.

143.   As a direct and natural consequence of Coleman's battery against Plaintiff, she suffered injuries including, without limitation, emotional distress, psychological trauma, and mortification.

144.   School Defendants are directly and vicariously liable for Defendant Coleman's battery against Plaintiff under the doctrine of *respondeat superior*.

145.    Defendant Coleman was employed as a teacher by KIPP DC, and subsequently by Defendant Capital City, when he battered Plaintiff.

146.    Defendant Coleman battered Plaintiff while Coleman was performing teaching services within the ordinary course of his employment with School Defendants.

147.    Defendant Coleman misused his duties and authority as a school employee over Plaintiff to commit battery against Plaintiff.

148.    Defendants Coleman's actions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences he was aware, based on his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to Plaintiff Jane Doe.

149.    Defendant Coleman's battery, for which School Defendants are vicariously liable, directly and proximately caused Plaintiff Jane Doe to suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain, discomfort, and mental anguish, and these will continue in the future; she has suffered disfigurement and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the future; she has incurred expenses for doctors and related medical and occupational care, and in the future she will continue to incur such expenses in an effort to be cured and healed; and in the future she will or may continue to lose time, income and earning capacity as well as other benefits from her work, employment or chosen occupation; and they have caused her to be unable to perform all of her activities of daily living and enjoyment, or to enjoy the normal activities of life, and will or may continue to cause her to be unable to perform such activities in the future.

## COUNT IX
## Intentional Infliction of Emotional Distress
## (Defendants Coleman and School Defendants)

150.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

151.   Coleman pled guilty to 2 felony counts of child sexual abuse against Plaintiff.

152.   Defendant Coleman's criminal sexual misconduct against Plaintiff was outrageous, atrocious, and intolerable, and so extreme in degree that it went beyond all possible bounds of decency. Coleman's sexual misconduct against Plaintiff is utterly intolerable in a civilized community.

153.   Defendant Coleman's sexual misconduct against Plaintiff has caused her to suffer extreme and severe emotional distress, including but not limited to fright, horror, grief, shame, humiliation, and anger, so extreme that no reasonable person could be expected to endure it.

154.   As a direct and natural consequence of Coleman's intentional infliction of emotional distress against Plaintiff, she suffered injuries including, without limitation, emotional distress, psychological trauma, and mortification.

155.   School Defendants' are directly and vicariously liable for Defendant Coleman's intentional infliction of emotional distress against Plaintiff under the doctrine of *respondeat superior*.

156.   Defendant Coleman was employed as a teacher at Defendant KIPP DC and subsequently by Defendant Capital City when he intentionally inflicted emotional distress upon Plaintiff.

157.   Defendant Coleman intentionally inflicted emotional distress upon Plaintiff while Coleman was performing teaching services within the ordinary course of his employment with School Defendants'.

158.   Defendant Coleman misused his duties and authority as a school employee over Plaintiff to commit intentional infliction of emotional distress against Plaintiff.

159.   Defendants Coleman's actions were taken in conscious disregard of Plaintiff's rights and/or with reckless indifference to the consequences he was aware, based on his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to Plaintiff Jane Doe.

160.     Defendants Coleman's intentional infliction of emotional distress, for which

Defendant School Board is vicariously liable, directly and proximately caused Plaintiff Jane Doe to

suffer serious, disabling and painful injuries which are or may be permanent; to suffer physical pain,

discomfort, and mental anguish, and these will continue in the future; she has suffered disfigurement

and/or deformity, humiliation and/or embarrassment, inconvenience and this will continue into the

future; she has incurred expenses for doctors and related medical and occupational care, and in the

future she will continue to incur such expenses in an effort to be cured and healed; and in the future

she will or may continue to lose time, income and earning capacity as well as other benefits from her

work, employment or chosen occupation; and they have caused her to be unable to perform all of her

activities of daily living and enjoyment, or to enjoy the normal activities of life, and will or may

continue to cause her to be unable to perform such activities in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe, prays the Court for judgment against Defendants KIPP

DC, Capital City Public Charter School, Inc., Alan Coleman, Susan Ettinger, Jane Roes (1-10),

jointly and severally, for an amount of no less than $10,000,000.00 for compensatory and punitive

damages, together with costs of this suit, legal interest, reasonable attorney's fees and such other

relief as the Court may deem just and proper under the circumstances.

**THE COCHRAN FIRM**

Sandra H. Robinson #386469
1100 New York Avenue, N.W.
Suite 340, West Tower
Washington, DC  20005
(202) 682-5800
SRobinson@cochranfirm.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Sandra H. Robinson