**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JANE DOE, | : | |
| Plaintiff, | : | Civil Action No.: 18-260 (RC) |
| | : | Re Document Nos.: 24, 26 |
| v. | : | |
| KIPP DC SUPPORTING CORP. et al, | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

## DENYING PLAINTIFF JANE DOE'S MOTION FOR RELIEF FROM JUDGMENT; GRANTING PLAINTIFF JANE DOE'S MOTION FOR LEAVE TO FILE A REPLY IN SUPPORT OF MOTION FOR POST-JUDGMENT RELIEF

## I. INTRODUCTION

Plaintiff Jane Doe brought this action in 2018 alleging that her former teacher sexually abused her and that his employers failed to prevent the abuse. Compl. ¶¶ 1, 7, ECF No. 4. In January 2019, the Court dismissed the case without prejudice. *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, 8–15 (D.D.C. 2019). Ms. Doe now moves for relief from that judgment under Federal Rule of Civil Procedure 60(b)(5) and (b)(6). *See* Pl.'s Mot. Relief from J. ("Pl.'s Mot."), ECF No. 24. Because Ms. Doe has not established a basis for relief under Rule 60(b)(5) or (b)(6), the Court denies the motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Doe was a student at KIPP DC from approximately 2000 or 2001 until 2005. Compl. ¶¶ 1, 20. During the 2004–2005 school year, Alan Coleman became her eighth-grade science and history teacher. *Id.* ¶ 21. Ms. Doe alleges that Coleman began sexually abusing her in

approximately November 2004, when she was fourteen years old. *Id.* ¶¶ 1, 26. She further alleges that KIPP DC and its then-principal Susan Ettinger came to suspect that Coleman was engaged in an inappropriate relationship with her, and that KIPP DC declined to renew Coleman's contract. *Id.* ¶ 33. Coleman thereafter began teaching at Capital City Public Charter School ("Capital City"). *Id.* ¶ 29. According to Ms. Doe, although Ettinger informed a Capital City board member of her suspicions, neither school investigated Coleman nor otherwise acted to stop the abuse. *Id.* ¶ 33.

Ms. Doe left KIPP DC after eighth grade, but she alleges that Coleman's abuse continued. *Id.* ¶¶ 26, 28. During the 2005–2006 school year, Ms. Doe's mother learned of the abuse and reported Coleman to Capital City, which Ms. Doe alleges took no disciplinary action. *Id.* ¶ 31. In 2007, Ms. Doe moved into Coleman's home, and the abuse allegedly continued until June 2009. *Id.* ¶¶ 26, 51. Ms. Doe turned 18 in 2008. *See id.* ¶ 1.

Ms. Doe did not begin to realize the wrongfulness of Coleman's conduct until February 2015. *Id.* ¶ 34. She then confronted Coleman and asked him to resign from Capital City. *Id.* When he did not, Ms. Doe contacted Capital City, which terminated Coleman. *Id.* The police learned of the abuse in 2016, and Coleman later pleaded guilty to sexual abuse offenses in Maryland and the District of Columbia. *Id.* ¶ 35; *Doe*, 373 F. Supp. 3d at 6.

On February 2, 2018, Ms. Doe filed this civil action against Coleman; KIPP DC Supporting Corporation ("KIPP DC"); Capital City; Ettinger; and ten unnamed employees or agents of the schools. *See* Compl. She asserted claims under Title IX, 42 U.S.C. § 1983, as well as claims for negligence per se, gross negligence, assault, battery, and intentional infliction of emotional distress. *Id.* ¶¶ 58–160.

On January 3, 2019, the Court granted the defendants' motions to dismiss, concluding that Ms. Doe's claims were untimely, and dismissed the case without prejudice. *Doe*, 373 F. Supp. 3d at 8–15. Months later, on May 3, 2019, the District of Columbia's Sexual Abuse Statute of Limitations Amendment Act of 2018 took effect. *See* Sexual Abuse Statute of Limitations Amendment Act of 2018, D.C. Law 22-311, 66 D.C. Reg. 1398 (Feb. 1, 2019); *see also* 66 D.C. Reg. 5806 (May 10, 2019) (setting effective date of May 3, 2019). The Act expanded the limitations period for civil actions arising from sexual abuse and provided that certain claims that had been time-barred under the prior limitations period could be "revived" if brought within two years of the Act's effective date. *See* D.C. Code § 12-301(11); D.C. Law 22-311 § 5(a)(2). Ms. Doe filed a second action in April 2021, within that two-year period, reasserting many of the claims from her 2018 complaint against the same defendants. *See* Compl., *Perez v. KIPP DC Supporting Corp*., No. CV 21-929 (RC), ECF No. 1.

The Court dismissed the 2021 action on res judicata grounds. *See Perez v. KIPP DC Supporting Corp.*, 590 F. Supp. 3d 150, 157–59 (D.D.C. 2022). The D.C. Circuit reversed, explaining that because the Court had dismissed the 2018 action without prejudice, the dismissal did not operate as an adjudication on the merits and therefore had no res judicata effect. *Perez v. Kipp DC Supporting Corp.*, 70 F.4th 570, 572 (D.C. Cir. 2023). Additionally, it rejected the Court's conclusion that constitutional avoidance principles prevented application of the new revival statute to Ms. Doe's claims. *Id.* at 573.

On remand, the Court dismissed some of Ms. Doe's claims but allowed several other claims to proceed. *Perez v. KIPP DC Supporting Corp.*, No. CV 21-929 (RC), 2024 WL 3534769, at *14 (D.D.C. July 25, 2024). Ms. Doe thereafter filed an amended complaint. *See* First Am. Compl., *Perez v. KIPP DC Supporting Corp*., No. CV 21-929 (RC), ECF No. 57. The

parties then engaged in discovery, which concluded on March 19, 2025. *See* Minute Order, *Perez v. KIPP DC Supporting Corp.*, No. CV 21-929 (RC) (March 3, 2025). In July 2025, KIPP DC and Capital City both filed motions for summary judgment on all claims. *See* Mot. for Summ. J. by KIPP DC, *Perez v. KIPP DC Supporting Corp*., No. CV 21-929 (RC), ECF No. 86; Mot. for Summ. J. by Capital City, *Perez v. KIPP DC Supporting Corp*., No. CV 21-929 (RC), ECF No. 87. The motions are pending before the Court.

While the 2021 action remained pending, Ms. Doe returned to this closed case. On December 5, 2025, she filed the present motion under Federal Rule of Civil Procedure 60(b)(5) and (b)(6).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) "permits a party to seek relief from a 'final judgment, order, or proceeding' for various reasons." *Salazar v. D.C.*, 729 F.Supp.2d 257, 260 (D.D.C. 2010) (quoting Fed. R. Civ. P. 60(b)). "The party seeking relief under Rule 60(b) bears the burden" of showing entitlement to the relief. *Brown v. Dalton*, 312 F.R.D. 239, 241 (D.D.C. 2015) (quoting *Norris v. Salazar*, 277 F.R.D. 22, 25 (D.D.C. 2011)). Although the decision whether to grant relief is committed to the Court's discretion, the Court "must balance the interest in justice with the interest in protecting the finality of judgments." *Id.* at 241–42 (quoting *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004).

Rule 60(b)(5), as relevant here, authorizes relief when a judgment (1) "is based on an earlier judgment that has been reversed or vacated" or when (2) "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The first ground is narrow: It applies when "'the present judgment is based on the prior judgment in the sense of claim or issue preclusion'—not 'merely because a case relied on as precedent by the court in rendering the present judgment has

since been reversed.'" *Driever v. United States*, No. CV 19-1807 (TJK), 2021 WL 1946391, at *2 (D.D.C. May 14, 2021) (quoting Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2863 & n.11 (3d ed.)); *see also Micula v. Gov't of Romania*, No. 17-CV-02332 (APM), 2022 WL 18356669, at *7 (D.D.C. Dec. 22, 2022), *aff'd*, 101 F.4th 47 (D.C. Cir. 2024). Thus, "[a] change in the law following a judgment does not merit relief under Rule 60(b)(5)." *Morrow v. United States*, No. CV 09-555 (RBW), 2011 WL 13377426, at *4 (D.D.C. June 10, 2011) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 60.46 (3d ed. 1997)); *see also Horne v. Flores*, 557 U.S. 433, 447 (2009) ("Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests.").

The second ground concerns judgments with prospective effect. A judgment is prospective for purposes of Rule 60(b)(5) when it is "'executory' or involves 'the supervision of changing conduct or conditions.'" *Morrow*, 2011 WL 13377426, at *4 (quoting *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1139 (D.C. Cir. 1988)). The Court must determine prospective effect first. *See Twelve John Does*, 841 F.2d at 1140. If that threshold is met, the movant must then show "a significant change either in factual conditions or in law" such that continued enforcement is no longer equitable. *Hall v. C.I.A.*, No. CIV.A. 98-1319 PLF, 2004 WL 6076864, at *5 (D.D.C. Apr. 22, 2004) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

Rule 60(b)(6) is a catch-all provision that permits courts to grant relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). It "should be only sparingly used" and applies only in "extraordinary circumstances." *Kramer v. Gates*, 481 F.3d 788, 791–92 (D.C. Cir. 2007) (citations omitted). The standard is a "high bar," *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 852 (D.C. Cir. 2016), and "intervening developments in the law by

themselves rarely constitute extraordinary circumstances," *Kapar v. Islamic Republic of Iran*, 105 F. Supp. 3d 99, 104–05 (D.D.C. 2015) (quoting *Agostini v. Felton*, 521 U.S. 203, 239 (1997)) (cleaned up).

## IV. ANALYSIS

### A. Ms. Doe did not file her motion within a reasonable time

A motion under either Rule 60(b)(5) or (b)(6) must be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Whether a delay is reasonable depends on the circumstances, including "the length of the delay, the explanations for the delay, the prejudice to the opposing party caused by the delay and the circumstances warranting relief." *Evans v. Fenty*, 701 F. Supp. 2d 126, 157 (D.D.C. 2010) (quoting *Associated Builders & Contractors v. Mich. Dep't of Labor*, 543 F.3d 275 (6th Cir. 2008)). For Rule 60(b)(6) motions in particular, courts in this Circuit have treated lengthy delays with skepticism. *See Carvajal v. Drug Enf't Admin.*, 286 F.R.D. 23, 26 (D.D.C. 2012) ("In this Circuit, courts almost uniformly deny Rule 60(b)(6) motions as untimely when they are filed more than three months after judgment.").

Ms. Doe filed the present motion on December 5, 2025, nearly seven years after entry of judgment. She contends that the relevant period should instead run from the D.C. Circuit's decision in *Perez v. Kipp DC Supporting Corp.*, 70 F.4th 570 (D.C. Cir. 2023). *See* Pl.'s Reply 3, ECF No. 26-1.[1] But even accepting Ms. Doe's contention, she offers no explanation for the approximately two-and-a-half-year delay that followed that June 13, 2023, decision. And during the same period, she actively litigated her 2021 action, which proceeded through discovery, confirming that she was well aware of the D.C. Circuit's decision and had ample opportunity to

[1] Ms. Doe's Motion for Leave to File a Reply in Support of Motion for Post-Judgment Relief is Granted, ECF No. 26, and the Court has considered the attached reply.

invoke it earlier. Courts in this Circuit have found substantially shorter unexplained delays unreasonable. *See*, *e.g.*, *Karim-Panahi v. Washington Metro. Area Transit Auth.*, No. 08-7093, 2008 WL 5640693, at *1 (D.C. Cir. Dec. 19, 2008) (per curiam) (eighteen months); *Darby v. Shulkin*, 321 F.R.D. 10, 12 (D.D.C. 2017) (over two years); *Goddard v. Serv. Emps. Int'l Union Loc. 32BJ*, 310 F.R.D. 190, 192 (D.D.C. 2015) (ten months in *pro se* action).

Given the length of the delay, Ms. Doe's failure to explain it, and the substantial litigation of the same underlying dispute, the Court concludes that the motion was not filed within a reasonable time. Although this conclusion alone is sufficient to deny Ms. Doe's motion, the Court nevertheless addresses Ms. Doe's arguments under Rule 60(b)(5) and (b)(6) below.

**B. Ms. Doe's motion does not satisfy Rule 60(b)(5)**

Ms. Doe invokes both relevant portions of Rule 60(b)(5). She argues, first, that the legal basis for the 2019 dismissal has since been reversed, *see* Pl.'s Mot. 5–6, and second, that continued application of the judgment is inequitable because it impedes factual development in this case and has been relied upon in other childhood sexual abuse cases, *see id.* at 5; Pl.'s Reply 3. Neither argument establishes a basis for relief under Rule 60(b)(5).

1. <u>Ms. Doe cannot obtain relief under Rule 60(b)(5)'s earlier judgment clause</u>

To begin, the 2019 judgment was not "based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). As explained above, that provision applies when the judgment rests on an earlier judgment through claim or issue preclusion, not merely because later case law undermines its reasoning. *See Driever*, 2021 WL 1946391, at *2; *Morrow*, 2011 WL 13377426, at *4. Here, no earlier judgment on which the 2019 judgment depended has been reversed or vacated. And the D.C. Circuit's later decision in *Perez* did not review—much less reverse—the 2019 judgment. Rather, it reversed the Court's dismissal of Ms. Doe's 2021 action,

holding that the 2019 dismissal without prejudice lacked res judicata effect and that the intervening revival statute permitted the later action to proceed. *See Perez*, 70 F.4th at 572–73.

In her motion for relief from judgment, Ms. Doe focuses on the Court's conclusion that the discovery rule did not toll her claims where she remembered the alleged abuse but did not appreciate its wrongfulness until later. Pl.'s Mot. 5–7; *see also Doe*, 373 F. Supp. 3d at 8–11. But the D.C. Circuit did not address, much less reject that conclusion in *Perez*; indeed, it observed that absent the intervening statutory change, this Court's "dismissal of [Ms. Doe's] 2018 complaint on statute of limitations grounds would seem to doom" Ms. Doe's 2021 complaint as untimely. 70 F.4th at 572. Thus, Ms. Doe's argument that *Perez* reversed the legal reasoning underlying the 2019 dismissal is incorrect. And even if *Perez* had called that reasoning into question, that alone would not satisfy this portion of Rule 60(b)(5). *See Morrow*, 2011 WL 13377426, at *4; *Horne*, 557 U.S. at 447.

2. Ms. Doe cannot obtain relief under Rule 60(b)(5)'s prospective application clause

Ms. Doe also argues that the 2019 judgment "continues to bar factual development, operate[s] as an adverse authority, and normalize[s] dismissal of trauma-based delayed discovery claims at the pleading stage." Pl.'s Reply 3. Defendants KIPP DC and Capital City emphasize that the dismissal is not prejudicial to Ms. Doe because she has been able to pursue her claims in the 2021 action, and that the dismissal is not binding on other courts. *See* Defs.' Opp'n 3, ECF No. 25.

That dispute over the judgment's present effects matters only if the 2009 judgment is prospective within the meaning of Rule 60(b)(5). *See* Fed. R. Civ. P. 60(b)(5). Under *Twelve John Does*, a judgment is prospective if it is "executory" or requires "the supervision of changing conduct or conditions." 841 F.2d at 1139. The 2019 judgment is neither. It dismissed this

action without prejudice and imposes no continuing obligations or need for ongoing judicial supervision.

Because the 2019 judgment lacks prospective effect, Rule 60(b)(5)'s prospective application clause does not apply. The Court therefore need not reach whether continued enforcement of the judgment would otherwise be inequitable.

**C. Ms. Doe has not established extraordinary circumstances under Rule 60(b)(6)**

Ms. Doe argues that extraordinary circumstances warrant relief because the 2019 dismissal "has been repeatedly used to bar similarly situated survivors and obstructed development of a factual record." Pl.'s Mot. 7. She also relies on the D.C. Circuit's decision in *Perez*, which, in her view, undermines the premise underlying the 2009 dismissal. *See id.* at 5–6.

Those circumstances do not satisfy Rule 60(b)(6)'s demanding standard. Courts have found extraordinary circumstances, for example, where an adversary failed to comply with a settlement agreement incorporated into a court order, where fraud was committed by a party's own counsel or another participant in the litigation, or where a losing party did not receive notice of the judgment. *See Kapar*, 105 F. Supp. 3d at 105 (citation omitted). Ms. Doe identifies no comparable circumstance here.

As explained above, *Perez* did not overturn the legal reasoning underlying the 2019 dismissal; and even an intervening change in law, standing alone, ordinarily does not constitute an extraordinary circumstance. *See Kapar*, 105 F. Supp. 3d at 104–05. Moreover, the 2019 decision is not binding precedent on other courts; its citation in other cases therefore does not itself amount to an extraordinary circumstance. Finally, Ms. Doe's objection that the case was dismissed before discovery concerns a circumstance known at the time of the proceedings, not some previously undisclosed fact or other circumstance that would render the judgment

"manifestly unjust." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980). In any event, her 2021 action later proceeded through discovery.

Without more, Ms. Doe's concerns do not clear Rule 60(b)(6)'s "high bar." *Philip Morris USA Inc.*, 840 F.3d at 852.

## V. CONCLUSION

For the foregoing reasons, Ms. Doe's Motion for Relief from Judgment (ECF No. 24) is **DENIED**, and Ms. Doe's Motion for Leave to File a Reply in Support of Motion for Post-Judgment Relief (ECF No. 26) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 24, 2026

RUDOLPH CONTRERAS
United States District Judge